| JUAN A. LUGO MELÉNDEZ | | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas |
|---|---|---|
| Recurrido | | |
| v. | KLCE202400935 | |
| GRUPO COOPERATIVO SEGUROS MÚLTIPLES, Y OTROS | | Caso núm.: CG2022CV00721 (705) |
| Peticionario | | Sobre: Daños y Perjuicios |

Panel integrado por su presidenta la juez Lebrón Nieves, la jueza Romero García y el juez Rivera Torres.

**Rivera Torres, Juez Ponente**

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 22 de octubre de 2024.

Comparece ente este tribunal apelativo, Grupo Cooperativo Seguros Múltiples (GCSM o el peticionario) mediante el recurso de *certiorari* de epígrafe solicitándonos que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI), el 11 de julio de 2024, notificada al día siguiente. Mediante este dictamen, el foro primario declaró *No Ha Lugar* a la *Solicitud de Sentencia Sumaria* presentada por el peticionario.

Por los fundamentos que expondremos a continuación, se deniega la expedición del auto de *certiorari*.

**I.**

El 9 de marzo de 2023, el Sr. Juan Lugo Meléndez (señor Lugo Meléndez o el recurrido) presentó una *Demanda* en contra de GCSM por alegado despido injustificado e incumplimiento de contrato. Adujo que fue contratado para fungir como Presidente, bajo un contrato de empleo con tiempo determinado, y fue despedido sin justa causa estando vigente el mismo. Además, alegó que fue humillado durante el proceso de despido provocándole daños

emocionales. Por ello, reclamó que se le pague la correspondiente indemnización por despido sin justa causa ($543,950); bono por desempeño ($198,000); liquidación por concepto de días de vacaciones y enfermedad; más daños y sufrimientos mentales ($500,000) causados por el alegado trato humillante cuando lo despidieron.

Oportunamente, GCSM presentó su contestación a la demanda, negando los hechos esenciales. Respecto al despido, alegó que fue con justa causa, ya que el señor Lugo Meléndez incumplió con los reglamentos de la empresa, más actuó de manera insubordinada. Además, expuso que no proceden las liquidaciones reclamadas por haber sido ya pagadas o por no tener derecho a las mismas.

Luego de varios incidentes procesales, los cuales no son necesarios consignar, el 26 de febrero de 2024, ambas partes presentaron sus respectivas mociones solicitando se dictara sentencia sumariamente.

El GCSM presentó una *Solicitud de Sentencia Sumaria* en la cual consignó cincuenta y nueve (59) hechos que, a su entender, no están en controversia.[1] Indicó que no existe controversia respecto a que hubo justa causa para el despido del señor Lugo Meléndez porque este aprobó un desembolso sin la correspondiente autorización de la Junta de Directores, en contravención a la política de la empresa. Añadió que este hizo falsas representaciones que fueron consideradas como falta de respeto a la empresa y a sus directivos. Por otro lado, señaló que el señor Lugo Meléndez recibió la liquidación que le correspondía, toda vez que no tiene derecho a las otras que reclama. Acompañó su petitorio con diez (10) anejos. [2]

---

[1] Véase, Apéndice del Recurso, a las págs. 000018-000027.
[2] Los anejos están compuestos de extractos de las siguientes deposiciones: Anejo 1- del Sr. Juan A. Lugo Meléndez; Anejo 2- de la Sra. Luisana Rincón Vela; Anejo 3- de la Sra. Ruth E. Gómez Arias; Anejo 4- del Sr. Juan Reyes Caraballo; Anejo 5- del Sr. Iván Alexis Otero Matos; Anejo 6- continuación de la Deposición del Sr.

Por su parte, el señor Lugo Meléndez también presentó una *Solicitud de Sentencia Sumaria,* en la cual esbozó treinta y ocho (38) hechos que, a su entender, no están en controversia.[3] Argumentó que actuó en todo momento conforme a las políticas y costumbres de la empresa, por lo que el despido fue sin justa causa. Señaló que oportunamente informó a la Junta de Directores sobre la situación del Plan Suplementario y sobre la reserva de $2 millones como inyección necesaria para el buen manejo, operaciones y solvencia de la empresa. A su vez, indicó que la Junta tenía pleno conocimiento del asunto y que, en ausencia de objeción, procedió con la inyección de dinero durante diciembre de 2020, días antes de firmar el nuevo contrato de empleo. Adujo que, en ningún momento, hubo insubordinación de su parte ni falta de respeto. Asimismo, acompañó con dicha moción nueve (9) exhibits.[4]

El 18 de marzo de 2024, ambas partes instaron sus respectivas mociones en oposición.

De entrada, el GCSM indicó en su *Oposición a Solicitud de Sentencia Sumaria,* que el petitorio sumario del señor Lugo Meléndez no cumple con los requisitos de la Regla 36 de las de Procedimiento Civil. Luego admitió algunos hechos de los propuestos, negó y cualificó otros.[5] Acompañó la moción con extracto de la Deposición tomada a la Sra. María Del Mar Pérez (Anejo A).[6]

El señor Lugo Meléndez presentó su oposición mediante moción intitulada *Réplica a Solicitud de Sentencia Sumaria de la*

---

Juan A. Lugo Meléndez; y, Anejo 9- de la Sra. Luisana Rincón Vela. El Anejo 7- Declaración Jurada de la Sra. Luisana Rincón Vela; el Anejo 8- Declaración Jurada de la Sra. Ruth E. Goméz Arias; y el Anejo 10- Declaración Jurada de la Sra. Milagros I. Vera Colón.

[3] Véase, Apéndice del Recurso, a las págs. 000307-000315.

[4] Los exhibits están compuestos de los extractos de las siguientes deposiciones: Exhibit 1- del demandante; Exhibit 2- del Sr. Iván Alexis; Exhibit 3- de la Sra. María del Mar Pérez; Exhibit 4- del Sr. Luis Alberto; y el Exhibit 5 – de la Sra. Ruth Gómez. Exhibit 6- Contrato de empleo; Exhibit 7-Informe de pensiones; Exhibit 8- Política de Plan de Pensiones Suplementario; y el Exhibit 9-Carta de Despido.

[5] Véase, Apéndice del Recurso, a las págs. 000405-000409. Admitió los hechos propuestos números 1, 2, 4, 5, 8, 9-12, 15-18, 24-28, 30-32; 34-35.

[6] *Íd.,* a las págs. 000418-000420.

*parte demandada* en la cual argumentó sobre los hechos sugeridos por GCSM.[7] Acompañó la moción con cinco (5) anejos.[8] En esta última instó la réplica a la oposición, en la cual reiteró que la misma es improcedente de su faz por no cumplir con los requisitos de la Regla 36 de las Reglas de Procedimiento Civil. Además, discutió los argumentos presentados por el señor Lugo Meléndez en su oposición.[9]

El 4 de abril y el 15 de mayo de 2024 se celebraron las vistas argumentativas en relación a los petitorios de adjudicación sumaria. Surge del dictamen recurrido, que el señor Lugo Meléndez reiteró sus planteamientos y argumentó que el plan de pensiones tenía un déficit millonario que requería que se hicieran de forma directa las aportaciones. Alegó que, precisamente, el desembolso de $2,000,000, el cual se había incluido como reserva en los informes mensuales previos, constituía la mejor forma de subsanar la situación y evitar pérdidas económicas a la empresa. Por otro lado, GCSM argumentó que el desembolso se realizó sin la correspondiente aprobación de la Junta. Además, alegó que, en este caso, no aplican las disposiciones sobre despido injustificado por tratarse de un contrato de empleo por tiempo determinado, por lo que no proceden los reclamos del señor Lugo Meléndez en cuanto al bono y licencias.

Escuchados los argumentos de las partes, y analizadas las mociones; así como los documentos acompañados, el TPI dictó la *Resolución* recurrida declarando *No Ha Lugar* a ambas solicitudes de sentencia sumaria. En dicho dictamen el foro *a quo* consignó

---

[7] *Íd.*, a las págs. 000402-000430.
[8] Anejo 1- Informe sobre el plan de Pensiones Suplementario; Anejo 2- Acta RO-2020-19; Anejo 3- Informe Operacional Mensual, septiembre 2020; Anejo 4-Carta del 5 de marzo de 2021 dirigida al Sr. Iván Otero Matos (Presidente de la Junta de Directores); y Anejo 5- Deposición del Demandante, págs. 342-345.
[9] Véase, Apéndice del Recurso, a las págs. 00467-000474.

sesenta y dos (62) determinaciones de hechos y determinó que los siguientes hechos están en controversia:[10]

1. Normas, políticas, procedimientos y/o reglamentos específicos de la empresa en cuanto a las funciones y responsabilidades del Presidente, vigentes a la fecha de los hechos, sobre el manejo de presupuesto, control de gastos, reservas, desembolsos, entre otros asuntos.

2. Extensión y límites de las responsabilidades del demandante en cuanto al funcionamiento y operación del Plan Suplementario, aportaciones, reservas, inversiones y manejo del Fideicomiso y otros relacionados.

3. Acciones u omisiones por parte del demandante, con relación al manejo del Plan Suplementario, y tareas relacionadas.

4. Acciones u omisiones por parte de la Junta de Directores de la empresa demandada con respecto al Plan Suplementario y otras tareas relacionadas.

5. Normas y protocolo de la Junta de Directores de la empresa demandada sobre el proceso para la aplicación de medidas disciplinarias y/o terminación del contrato de empleo del demandante.

6. Extensión de las cláusulas y condiciones del contrato de empleo por término definido en cuanto a la terminación de empleo.

7. Acciones u omisiones por parte del demandante hacia la Junta de Directores durante la reunión del 24 de febrero de 2021.

8. Acciones u omisiones por parte de la empresa demandada en atención y manejo de las situaciones expuestas por el demandante durante la reunión del 24 de febrero de 2021.

9. Requisitos o procedimientos internos de la empresa para liquidación de bono y licencias por terminación de contrato de empleo.

10. Acciones u omisiones de la empresa demandada con respecto al proceso de terminación de empleo y la salida del demandante de la compañía.

11. Acciones u omisiones de la empresa demandada con respecto al pago del bono de productividad a los empleados durante el término de vigencia del contrato de empleo del demandante, así como sobre la liquidación de licencias.

12. Fundamentos y procedencia de la terminación del empleo del demandante.

Además de lo antes señalado, el foro recurrido razonó que:[11]

[...] estamos ante una controversia laboral, al amparo de contrato de empleo a tiempo determinado vigente al momento del despido, **con alegaciones que contienen elementos subjetivos y de credibilidad**. Sabido es que, este tipo de controversia debe resolverse en sus méritos. El caso ante nuestra consideración no es la excepción. Claramente, de sus respectivas peticiones y documentos en oposición **surgen argumentos y versiones encontradas sobre los mismos hechos**, los cuales alegadamente dieron paso a la recisión del contrato en controversia.

De un análisis detallado de la prueba que acompaña las respectivas mociones, podemos concluir que las

---

[10] *Íd.*, a las págs. 000488-000489.
[11] *Íd.*, a las págs. 000493-000495.

partes **no nos han puesto en posición de resolver la controversia de forma sumaria**. Está en controversia los límites que tenía el demandante como Presidente para obrar en beneficio del Plan Suplementario, elemento esencial de la controversia. No tenemos duda, de que la posición que ocupaba el demandante como Presidente de Grupo Cooperativo **le requería administrar el Plan Suplementario de retiro, incluyendo la administración de las aportaciones, inversiones y manejo del fideicomiso**. Según el Manual de Políticas del Grupo Cooperativo, del Plan Estratégico preparado por el grupo gerencial de cinco años se deriva el presupuesto, el cual debe ser actualizado anualmente para la aprobación de la Junta de Directores mediante la expedición de una certificación firmada. Posterior a dicha aprobación, y habiendo iniciado el año presupuestado, comienza el proceso de manejo y control de gastos con relación al presupuesto aprobado, el cual requiere informes trimestrales. El Manual dispone que, como parte de la fase control, cuando se proyecte que alguna partida excederá un 5% (o $100,000.00) de lo presupuestado, serán sometidas a la consideración de la Junta para su consideración y acción correspondiente. También, establece que en caso de que algún gasto exceda lo presupuestado sin que se haya dado previa notificación a la Junta, se le deberá informar por la Gerencia y/o Comité de Finanzas.

**No obstante**, ni la parte *demandante* ni la empresa *demandada* **presentó una guía de procedimientos internos o pasos que se deben seguir para cumplir con las correspondientes notificaciones, aprobaciones y autorizaciones**. Solo se presentaron las versiones vertidas durante las deposiciones de varios funcionarios, incluyendo el propio demandante. Específicamente, sobre el desembolso no autorizado, el demandante alega que **la Junta tenía conocimiento de ello y no lo objetó**. Arguye, que la reserva para cubrir el desembolso en exceso de lo presupuestado se había incluido en los informes de los meses de septiembre, octubre y noviembre, conforme al uso y costumbre de la empresa.

Por el contrario, **la empresa demandada alega que tal acción no constituye notificación suficiente** para obtener la autorización correspondiente de la Junta de Directores. **En ausencia de evidencia sobre los procedimientos o pasos específicos, estamos ante un asunto de credibilidad que tiene que ser dirimido mediante juicio plenario**.

A su vez, en **cuanto a la alegada falta de respeto** del demandante hacia la Junta durante la reunión del 24 de febrero de 2021, la empresa alega que el demandante les mintió tras ofrecer una carta firmada cuando en realidad no se había firmado. En su defensa, el demandante alega que sus expresiones fueron resultado de sus esfuerzos para atender lo que él entendía constituía falta de respeto hacia su persona y su grupo de trabajo, por lo cual estaría presentando quejas contra algunos miembros de la Junta. **Como vemos, estamos ante otro asunto de credibilidad y de elementos subjetivos**. De la minuta del 24 de febrero de 2021, no surge claramente el fundamento para concluir que el demandante les había faltado el respeto. Por otro lado, aunque sí surge una discusión en ausencia del demandante acerca de sus argumentos sobre las quejas contra la junta y el anónimo que

recibió de la KPMG (compañía auditora), **no surge que haya habido una investigación interna, ni se presentaron hallazgos de algún informe dirigido a tales fines, ni de la consulta legal sobre posibles acciones disciplinarias que fue aprobada durante dicha reunión.**

Ni de la minuta del 24 de febrero de 2021, ni de la prueba presentada, surge claramente el fundamento de la empresa demandada que los llevó a concluir que existía justa causa para el despido inmediato del demandante. Si bien es cierto que el contrato de empleo contiene una cláusula que establece las circunstancias en que se podía dar por terminado el contrato con justa causa, **no es menos cierto que tales fundamentos no están del todo claros en el expediente.** Incluso, **llama la atención que**, de la misma minuta antes citada, **hay una parte de la discusión que consta en récord, y otra que no consta en el récord.** [Énfasis nuestro]

Inconforme con el dictamen, el GCSM solicitó su reconsideración. El 30 de julio de 2024, notificada ese mismo día, el TPI declaró *no ha lugar* al referido petitorio.

Todavía en desacuerdo, el peticionario acude ante este foro apelativo imputándole al foro *a quo* haber incurrido en los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EXISTE CONTROVERSIA EN CUANTO [A] LA CAPACIDAD DEL PRESIDENTE EJECUTIVO PARA DESEMBOLSAR LOS DOS MILLONES DE DÓLARES ($2,000,000.00)
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE HAY CONTROVERSIA SOBRE LAS REPRESENTACIONES O MANIFESTACIONES DEL DEMANDANTE ANTE LA JUNTA DE DIRECTORES EN RELACIÓN CON LA ALEGADA EXISTENCIA DE UN ESCRITO QUE NO EXISTÍA.
>
> ERRÓ EL TRIBUNAL AL DETERMINAR QUE EXISTE CONTROVERSIA SOBRE LA TERMINACIÓN DEL CONTRATO DEL DEMANDANTE.
>
> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EXISTE CONTROVERSIA EN CUANTO A LOS REQUISITOS INTERNOS DE GRUPO COOPERATIVO SOBRE BONOS Y LICENCIAS POR TERMINACIÓN DE CONTRATOS.

El 3 de septiembre de 2024, emitimos una *Resolución* donde, entre otros asuntos, le concedimos a la parte recurrida el término de diez (10) días para expresarse. El 27 de septiembre siguiente, la parte recurrida presentó su *Alegato en Oposición ...*, por lo que nos

damos por cumplidos y a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Auto de *Certiorari***

Todo recurso de *certiorari* presentado ante nuestra consideración debe ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil (32 LPRA Ap. V. R. 52.1). En apretada síntesis, la referida norma dispone que el recurso de *certiorari* **solamente será expedido** para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, al amparo de las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.[12]

A su vez, aun cuando un asunto esté comprendido dentro de las materias que podemos revisar, de conformidad con la Regla 52.1 de las de Procedimiento Civil, *supra*, previo a ejercer debidamente nuestra facultad revisora sobre un caso, es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento (4 LPRA Ap. XXII-B), se justifica nuestra intervención, pues distinto al recurso de apelación, **este tribunal posee discreción para expedir el auto** el *certiorari*. *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999). Por supuesto esta discreción no opera en el vacío y en ausencia de parámetros que la dirija. *I.G. Builders et al. v. BBVAPR*, supra; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).

---

[12] No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia

Precisa recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).[13] Así, pues, se ha considerado que la discreción se nutre de un juicio racional cimentado en la razonabilidad y en un sentido llano de justicia y "no es función al antojo o voluntad de uno, sin tasa ni limitación alguna." *Íd.*[14]

A estos efectos, la Regla 40 de nuestro Reglamento, *supra,* enumera los criterios que debemos considerar al momento de determinar si procede que expidamos el auto discrecional de *certiorari. I.G. Builders et al. v. BBVAPR, supra.* Dicha regla establece lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios antes transcritos sirven de guía para poder determinar, de manera sabia y prudente, **si procede o no**

---

[13] Citas omitidas.
[14] Citas omitidas.

**intervenir en el caso en la etapa del procedimiento en que se encuentra** el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

Cónsono con lo anterior, el Tribunal Supremo de Puerto Rico ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992).

### La Sentencia Sumaria

En nuestro ordenamiento jurídico, la Regla 36 de las Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, regula lo referente a una sentencia dictada sumariamente. La sentencia sumaria es un mecanismo procesal extraordinario que tiene el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales y, por tanto, no ameritan la celebración de un juicio en su fondo. *Mgmt. Adm. Servs. Corp. v. E.L.A.*, 152 DPR 599, 610 (2000).

La parte que promueva la solicitud debe presentar una moción, fundamentada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos materiales y pertinentes, para que el tribunal dicte sentencia sumaria a favor sobre la totalidad o parte de la reclamación. Regla 36.1, *supra*, 32 LPRA Ap. V, R. 36.1. Entonces, procede que se dicte sentencia sumaria únicamente cuando de los documentos no controvertidos surge que no hay controversias de hechos a ser dirimidas, no se lesionan los intereses de las partes y

solo resta aplicar el derecho. *Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 720 (1986).

La sentencia sumaria solo debe dictarse en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes. *Id.,* pág. 721. Si existe duda sobre la existencia de una controversia, debe resolverse contra la parte que solicita que se dicte sentencia sumaria a su favor. *Id.* Este mecanismo es un remedio discrecional y su uso debe ser mesurado. *NissenHolland v. Genthaller,* 172 DPR 503, 511 (2007).

Puntualizamos que nuestra jurisprudencia ha sido clara en el sentido de que no es aconsejable utilizar el mecanismo procesal de sentencia sumaria en casos donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial. *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994). La razón para ello es que en este tipo de casos es sumamente difícil que el tribunal pueda reunir ante sí toda la verdad de los hechos a través de documentos. Piñero v. A.A.A., 146 DPR 890, 904-905 (1998).

Finalmente, en el ejercicio de su sana discreción, el tribunal puede abstenerse de resolver sumariamente casos complejos o que envuelvan cuestiones de interés público. *H.M.C.A. (P.R.), Inc., etc. v. Contralor,* 133 DPR 945, 958 (1993).

De otra parte, como foro apelativo, debemos utilizar los mismos criterios que los tribunales de primera instancia al determinar si procede dictar sumariamente una sentencia. En esta tarea, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia y determinar si existe o no alguna controversia genuina de hechos pertinentes y esenciales, y si el derecho se aplicó de forma correcta. La tarea de adjudicar los hechos relevantes y esenciales en disputa le corresponde únicamente al foro

de primera instancia en el ejercicio de su sana discreción. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004).

## III.

En síntesis, el peticionario señaló que erró el TPI al no dictar sentencia sumariamente. A su entender, no existen hechos en controversia en cuanto a que el despido del recurrido fue con justa causa. A su vez, indicó que tampoco existe un incumplimiento de contrato.

De entrada, advertidos que se recurre de una moción de carácter dispositivo, la cual es una de las instancias que podemos atender al palio de la Regla 52.1 de las de Procedimiento Civil, *supra.* Sin embargo, analizados los argumentos esbozados por el peticionario en el recurso, al amparo de los Regla 40 de nuestro Reglamento, *supra,* no encontramos que estén presentes los criterios allí enunciados para intervenir con el dictamen objetado.

Luego de un análisis de *novo* de las mociones presentadas, no surge del dictamen recurrido que el foro recurrido haya abusado de su discreción o se haya equivocado en la interpretación o aplicación de las normas procesales o del derecho sustantivo relacionado a la controversia de autos. Como señaló el TPI, en su fundamentada *Resolución,* estamos ante una controversia laboral, al amparo de un contrato de empleo a tiempo determinado vigente al momento del despido, con alegaciones y hechos materiales en controversia que contienen elementos subjetivos y de credibilidad. Además, de la lectura de los anejos incluidos en los petitorios sumarios, colegimos con lo expresado por el foro recurrido sobre que las partes acompañaron, como prueba documental, extractos de deposiciones de las cuales surgen versiones encontradas sobre los mismos hechos que dieron base a la rescisión del contrato en cuestión.

Asimismo, resultan ser hechos claros en controversia, entre otros, las formalidades, políticas o usos y costumbres gerenciales, si

alguna, para cumplir con las correspondientes notificaciones, aprobaciones y autorizaciones específicamente relacionadas con los desembolsos y las reservas; los límites y responsabilidades del Presidente respecto a la operación y funcionamiento del Plan Suplementario; así como el alcance de los acontecimientos ocurridos en la reunión del 24 de febrero de 2021. Esto, según expresó el foro primario en el dictamen recurrido.

Puntualizamos, que es harto conocido la máxima jurídica que, de existir una controversia real y sustancial sobre hechos relevantes, no procede conceder una solicitud de sentencia sumaria. *Oriental Bank v. Caballero García,* 212 DPR 671, 678 (2023). Es decir, si surgiese alguna duda en cuanto a la existencia de una controversia, sobre algún hecho material, esta debe resolverse en contra de la parte promovente. *Vera v. Dr. Bravo,* 161 DPR 308, 334 (2004). Por lo que, el tribunal dictará sentencia sumaria si procede como cuestión de derecho, y no está obligado a considerar una petición desestimatoria sumaria si existe algún hecho material o sustancial que impida resolver el pleito por la vía sumaria.

## IV.

Por los fundamentos antes expuestos, procede denegar el recurso de *certiorari* solicitado.

La juez Lebrón Nieves disiente mediante opinión escrita.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

| JUAN A. LUGO MELÉNDEZ | | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas |
|---|---|---|
| Recurrido | | |
| V. | KLCE202400935 | |
| GRUPO COOPERATIVO SEGUROS MÚLTIPLES, Y OTROS | | Caso núm.: CG2022CV00721 (705) |
| Peticionario | | Sobre: Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Jueza Romero García y Juez Rivera Torres



## VOTO DISIDENTE DE LA JUEZ LEBRÓN NIEVES

En San Juan, Puerto Rico, a 22 de octubre de 2024.

La Mayoría del Panel ha optado por denegar el recurso de epígrafe y al así hacerlo, declinar el ejercer su función revisora. Empero, distinto al curso de acción tomado por la Mayoría del Panel, la Juez que suscribe considera que el caso que nos ocupa es susceptible de ser resuelto de forma sumaria. Lo anterior, habida cuenta de que las controversias esbozadas por el foro primario y refrendadas por la Mayoría al denegar el recurso, envuelven controversias de derecho y no de hechos, las cuales los tribunales venimos llamados a resolverlas y no impiden la resolución sumaria del pleito.

En apretada síntesis, el caso que nos ocupa trata del despido del señor Juan A. Lugo Meléndez (en adelante, señor Lugo Meléndez o parte recurrida), quien fungía como Director Ejecutivo del Grupo Cooperativo (en adelante, parte peticionaria). Como razón para el despido, la parte peticionaria esgrimió dos razones: 1) la aprobación de un desembolso de dos millones de dólares ($2,000,000.00)

destinados a un Plan Suplementario de Pensiones, sin que dicha partida estuviera presupuestada, ni aprobada por la Junta de Directores del Grupo Cooperativo y 2) las acciones impropias del recurrido hacia miembros de la Junta de Directores y el equipo gerencial del Grupo Cooperativo.

El foro primario razonó que existen controversias que impiden la resolución sumaria del pleito, a saber: 1) la capacidad del Presidente Ejecutivo para desembolsar los dos millones de dólares ($2,000,000.00); 2) las representaciones o manifestaciones del recurrido ante la Junta de Directores en relación con la existencia de un escrito que no existía; 3) sobre la terminación del contrato del recurrido; 4) en cuanto a los requisitos internos del Grupo Cooperativo sobre bonos y licencias por terminación de contratos.



Repasemos el derecho atinente a la situación que nos ocupa. Como sabemos, la sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio.[1] *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *González Meléndez v. Mun. San Juan et al.*, 212 DPR 601 (2023); *Birriel Colón v. Econo y Otros*, 2023 TSPR 120, 213 DPR ___ (2023); *Delgado Adorno v. Foot Locker Retail*, 208 DPR 622 (2022); *Segarra Rivera v. Int'l Shipping et al.*, 208 DPR 964 (2022). La sentencia sumaria está regida por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta norma procesal. *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224 (2015).

Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la

---

[1] *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310 (2021); *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 808 (2020).

controversia. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales.[2] *Alicea Pérez v. Coop. Seg. Múlt. et al.*, 210 DPR 71 (2022). Procede dictar sentencia sumaria si de las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, se acredita la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si procede en derecho. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13. De la prueba adjunta a la solicitud de sentencia sumaria, deberá surgir preponderadamente la inexistencia de controversia sobre los hechos medulares del caso. *Birriel Colón v. Econo y Otros*, supra.

El Tribunal Supremo de Puerto Rico ha afirmado que, utilizado ponderadamente, el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios de los tribunales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo. Véase *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615 (2009); *Padín v. Rossi*, 100 DPR 259 (1971); *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019).

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos

---

[2] *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 662-663 (2017); *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 13; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018).

litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA,* 200 DPR 929, 940 (2018); *SLG Fernández-Bernal v. RAD-MAN,* supra, pág. 14.

Cumplidos estos requisitos, el inciso (e) de la Regla 36.3 establece lo siguiente:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente. El tribunal podrá dictar sentencia sumaria de naturaleza interlocutoria para resolver cualquier controversia entre cualesquiera partes que sea separable de las controversias restantes. Dicha sentencia podrá dictarse a favor o contra cualquier parte en el pleito. Si la parte contraria no presenta la contestación a la sentencia sumaria en el término provisto en esta regla, se entenderá que la moción de sentencia sumaria queda sometida para la consideración del tribunal. 32 LPRA Ap. V, R. 36.3 (e).[3]

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4)

---

[3] Véase, además, *Pérez Vargas v. Office Depot,* supra, pág. 699.

como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 14; *Serrano Picón v. Multinational Life Ins.*, supra, pág. 992.

En armonía con la normativa reseñada, nuestra Máxima Curia ha expresado que, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones *Birriel Colón v. Econo y Otros*, supra; *Ramos Pérez v. Univisión*, supra, págs. 215-216. Las meras afirmaciones no bastan. *Íd.* "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida). *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677. Además, se le exige a la parte que se oponga ciertas exigencias adicionales. Primeramente, deberá presentar una relación concisa y organizada de los hechos esenciales y pertinentes que, a su juicio, estén en controversia, citando específicamente los párrafos según fueron enumerados por el promovente de la moción. *SLG Fernández-Bernal v. RAD-MAN*, supra, pág. 15. También, deberá enumerar los hechos que no estén en controversia, con indicación de los párrafos o páginas de las declaraciones juradas u otra prueba admisible donde se establezcan estos. *Íd.* En adición, deberá esbozar las razones por las cuales no se debe dictar sentencia sumaria, argumentando el derecho aplicable. *Íd.*

Si el oponente no controvierte los hechos propuestos de la forma en la que lo exige la Regla 36.3 de Procedimiento Civil, *supra*, se podrán considerar como admitidos y se dictará la Sentencia Sumaria en su contra, si procede. *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.



Respecto a la revisión de las sentencias sumarias, nuestro Tribunal Supremo ha mandatado que, este foro apelativo deberá utilizar los mismos criterios que el Tribunal de Primera Instancia. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 114 (2015); *González Meléndez v. Mun. San Juan*, supra. Nuestro Máximo Foro ha sido claro en que, [l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra. De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Íd. Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *Meléndez González et al. v. M. Cuebas*, supra, pág. 116.



Nuestra última instancia judicial destacó que, la diferenciación entre controversias de hechos y derecho es una de importancia medular. Máxime, si se trata de asuntos analizados al amparo de una solicitud de sentencia sumaria que es de carácter dispositiva. Advirtió que, catalogar erróneamente controversias de derecho como controversias de hechos "eliminaría virtualmente el mecanismo de la sentencia sumaria de nuestro ordenamiento procesal, pues esta requiere expresamente la inexistencia de una controversia de hechos materiales". *Delgado Adorno v. Foot Locker*, supra, pág. 629-630. Sobre este particular, explicó que, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Id, pág. 629; *Meléndez González v. M. Cuebas, Inc.*, supra, pág. 110. Véase, *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010) (citando a J. A. Cuevas Segarra, *Tratado de derecho procesal civil*, San Juan, Pubs. JTS, 2000, T. I, pág. 609). La determinación de qué constituye una

conclusión de derecho y una determinación de hecho no es tarea fácil. Sin embargo, [se ha] reconocido que se considerará como una conclusión de derecho:

> "[c]ualquie[r] deducción o inferencia de un hecho probado, que no represente una deducción o una inferencia de tal hecho, *sino que represente la aplicación de un principio de ley, de un razonamiento lógico o de una opinión jurídica al hecho probado*, o al hecho deducido o inferido del hecho probado". *Lugo Montalvo v. Sol Melia Vacation Club*, supra, pág. 226. (citando a *Sanabria v. Sucn. González*, 82 DPR 885, 997 (1961)) (Énfasis en el original).

Es preciso destacar que, si bien en la opinión mayoritaria se hace alusión al *"análisis de novo"* de las mociones presentadas, lo cierto es que dicho dictamen carece del mencionado análisis. Antes bien, se circunscribe a una mención general, a los efectos de que, "no surge del dictamen recurrido que el foro recurrido haya abusado de su discreción o que se haya equivocado en la interpretación o aplicación de las normas procesales o del derecho sustantivo relacionados a la controversia de autos."

Es sobre este particular que la Juez que suscribe difiere, pues las controversias esgrimidas, en esencia, son de derecho y no de hechos y, por ende, no son susceptibles de derrotar la moción de sentencia sumaria. No podemos pasar por alto que, no toda controversia impide la solución sumaria del pleito, sino que tiene que tratarse de una controversia *real sustancial* de hechos. Lamentablemente, la *Resolución* de la Mayoría está huérfana del análisis correspondiente.

De la moción de sentencia sumaria interpuesta por la parte recurrida y sus anejos, se desprende con meridiana claridad las razones para la terminación del empleo del recurrido.

Específicamente, en torno a su terminación, el contrato entre las partes dispuso lo siguiente:

### VIII TERMINACIÓN DEL CONTRATO

A. Terminación por Justa Causa: Las partes acuerdan que el Grupo Cooperativo podrá dar por terminado el Contrato, en cualquier momento por justa causa.

Las partes acuerdan que terminación por justa causa para fines de este Contrato incluye, entre otras, la determinación de la Junta de Directores del Grupo Cooperativo a los efectos de que el Ejecutivo:

1. No ha cumplido con sus deberes u obligaciones.
2. Ha violado alguna cláusula de este Contrato.
3. Violación de las cláusulas de confidencialidad y no competencia de este Contrato.
4. Ha violado alguna norma, regia, política, código, práctica, directriz o procedimiento del Grupo Cooperativo.
5. Ha incurrido en insubordinación.
6. No ha rendido su trabajo en forma eficiente o lo ha hecho tardía o negligentemente.
7. Ha actuado negligentemente.
8. Ha incurrido en conducta impropia o desordenada.
9. No cuenta con las licencias, certificaciones y/o autorizaciones requeridas por ley para llevar a cabo las funciones del puesto o si estas son revocadas o suspendidas.
10. Ha violado una ley, reglamento o determinación de agencias reguladoras. En aquellos casos en que la violación sea subsanable, el Ejecutivo tendrá treinta (30) días a partir de la notificación por parte de la Junta de Directores para corregir o subsanar la violación.
11. Ha incurrido en deshonestidad, deslealtad, violación a deberes fiduciarios.
12. Ha incurrido en conflicto de intereses; o razones de similar seriedad o naturaleza.
13. La acusación de un delito que conlleve la malversación de fondos y/o depravación moral.

Además, se considera justa causa: cuando la terminación obedece a una orden de una autoridad federal, estatal o del Estado Libre Asociado de Puerto Rico; o cuando acciones u omisiones del Ejecutivo afecten adversamente el buen y normal funcionamiento del Grupo Cooperativo; la eliminación del puesto; cierre total, temporero o parcial de la Junta de Directores del Grupo Cooperativo a los efectos de que el Ejecutivo no puede desempeñarse como empleado del Grupo Cooperativo.

Si el Contrato es terminado antes de su expiración normal por voluntad de Ejecutivo o por el Grupo Cooperativo *por justa causa,* cesará toda obligación del Grupo Cooperativo hacia el Ejecutivo incluyendo el pago total de la



compensación y beneficios hasta la expiración normal de este Contrato.

En lo que respecta al manejo del Plan de Pensiones Suplementario, el Artículo D, inciso 5 de la política de la parte peticionaria, establece lo siguiente en cuanto a los deberes del Director Ejecutivo:

> 4. El Presidente de la Cooperativa tendrá la obligación de ordenar y asegurarse de que anualmente se aparte la cantidad que actualmente corresponda depositar para que el plan suplementario mantenga su proyección actuarial.

> 5. En aquel caso donde por causas económicas la Cooperativa haya tenido que aportar menos de lo que actuarialmente es necesario o no ha podido aportar al plan y dicha situación a juicio de los actuarios pone en peligro el Plan Suplementario o tenga el efecto de que no se puedan pagar los por cientos acordados con los participantes. (*Énfasis añadido*).



Ahora bien, queda meridianamente claro que, la determinación sobre las medidas a tomar en caso de que, por razones económicas, no se efectúen las correspondientes aportaciones al Plan Suplementario, **le corresponde a la Junta del Grupo Cooperativo**[4] y no es una prerrogativa exclusiva del Director Ejecutivo. Sobre este asunto, la Política del aludido Plan de Pensiones Suplementario también establece que:

> [.....]

> 5. En aquel caso donde por causas económicas la **Cooperativa** haya tenido que aportar menos de lo que actualmente es necesario o no ha podido aportar al plan y dicha situación a juicio de los actuarios pone en peligro el **Plan Suplementario** o tenga el efecto de que no se puedan pagar los por cientos acordados con los participantes; **la Junta deberá evaluar la situación luego de lo cual impartirá instrucciones al Presidente de la Cooperativa** para que le informe las alternativas a los participantes del plan que hayan firmado el contrato individual.

> Si la alternativa actuarial fuera a reducir los por cientos acordados los participantes tendrán la opción de renegociar el por ciento que resulte o renunciar al **Plan Suplementario.**

---

[4] Énfasis añadido.

En caso de terminación del plan los dineros separados revertirán a los fondos regulares de la **Cooperativa**.

Ante este escenario, resulta forzoso concluir que, de la documentación que obra en autos y que fue anejada a la moción de sentencia sumaria de la parte peticionaria, se desprenden con claridad las razones para la terminación del empleo del recurrido. Es un hecho incontrovertido el que el recurrido desembolsó la suma dos millones de dólares ($2,000,000.00) para nutrir el Plan de pensiones Suplementario, sin contar para ello con el aval previo de la Junta. Lo anterior, en contravención de las políticas de la compañía. Ciertamente, al ser la controversia medular una de *derecho*, tanto el foro primario como la Mayoría, debieron haber dispuesto del caso por la vía sumaria.

Por tal razón, esta Juez disiente del curso de acción tomado por la Mayoría del Panel.

**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones